IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RUFUS ROBINSON III,                    )      CV NO.  04-00672 DAE KSC
GRETCHEN M. ROBINSON,                  )
                                       )
        Plaintiffs,                    )
                                       )
    vs.                                )
                                       )
TRIPLER ARMY MEDICAL                   )
CENTER; TRIPLER ARMY                   )
MEDICAL CENTER, DIRECTOR               )
OF NEONATAL INTENSIVE                  )
CARE UNIT; STATE OF HAWAII,            )
DEPARTMENT OF HUMAN                    )
SERVICES; STATE OF HAWAII              )
CHILD PROTECTIVE SERVICE;              )
PATRICIA SNYDER, SOCIAL                )
SERVICES DIVISION                      )
ADMINISTRATOR; DAVID K.Y.              )
KAM, CPS SUPERVISOR;                   )
ELLIOTT PLOURDE, CPS                   )
WORKER; JUDGE LILLIAN                  )
RAMIREZ-UY; HONOLULU                   )
(CITY) POLICE                          )
DEPARTMENT/HONOLULU                    )
POLICE OFFICER KANAA (Badge            )
3617),                                 )
                                       )
        Defendants.                    )
_____       )

<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The Court heard Defendants' Motion on January 3, 2006. Rufus Robinson III, pro se, appeared at the hearing on behalf of Plaintiffs; Deputy Attorney General Kendall Moser appeared at the hearing on behalf of Defendants Patricia Snyder, David K. Y. Kam and Elliott Plourde; Deputy Corporation Counsel Marie M. Gavigan appeared at the hearing on behalf of Defendant Honolulu Police Department. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants' Motion for Summary Judgment.

<u>BACKGROUND</u>

On November 12, 2004, Plaintiffs Rufus Robinson III ("Mr. Robinson") and Gretchen Robinson ("Mrs. Robinson") (collectively "Plaintiffs") filed their Complaint, entitled "Kewai K. Robinson's Life Complaint and Summons." Plaintiffs have amended their Complaint on various occasions to include additional defendants and counts, the most recent amendment occurring on October 11, 2005.

Plaintiffs allege the following against Defendants Patricia Snyder ("Snyder"), David K. Y. Kam ("Kam") and Elliott Plourde ("Plourde") (collectively "Defendants"): 1) that Defendants are responsible for Second Degree

2

Murder[1] in the death of Kewai (Pls.' Amend. Compl. at 2); 2) on November 22, 2005 at 2:00 p.m., Plourde "ordered the police to arrest Melanie [Rapez, stepdaughter of Mr. Robinson and daughter of Mrs. Robinson] and take protective custody of Kewai with the intent to move him from tripler" (Id. at 5); 3) Plourde conspired with others, under 42 U.S.C. § 1985, to "vacate[] all rights of the adoptive parents of Kewai" (Count II) (Id.); 4) violations of Plaintiffs' Fourteenth Amendment rights for due process denials (Count IV) and because "Kewai was seized from his legal parents when there was threat of harm or immediate danger" to Kewai (Count V)[2] (Id. at 6); 5) § 1983 violation on the part of Defendants (Count VII) (Id. at 14); and 6) Fourth Amendment violation by Plourde for vacating the legal rights of Kewai and Plaintiffs and for seizing custody of Kewai without a warrant or probable cause (Count VIII) (Id. at 7.)

On November 16, 2005, Defendants filed the instant Motion for Summary Judgment. On November 29, 2005, Plaintiffs filed a Motion to Dismiss

---

[1] The Court will construe this Second Degree Murder charge as a claim for Wrongful Death.

[2] Because Plaintiffs are proceeding pro se, the Court will construe Counts IV and V to apply to Defendants even though Plaintiffs fail to name any defendants in those counts.

3

Defendants' Motion for Summary Judgment.  Defendants filed their Reply on

December 23, 2005.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) requires summary judgment to

be granted when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Depot

of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &

Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court "those portions of the

4

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

<u>DISCUSSION</u>

Defendants argue that they are entitled to summary judgment because there is no genuine issue of material fact that Defendants are entitled to Eleventh Amendment Immunity and Qualified Immunity.  Defendants further contend that Snyder and Kam did not participate in the deprivations alleged by Plaintiffs; that Kam and Plourde are immune from liability for reports submitted to Family Court; and that there were no delays in Kewai's treatment that resulted in his death.

In their Motion to Dismiss Defendants' Motion,[3] Plaintiffs counter that neither the state nor its employees are entitled to immunity in cases such as

---

[3] The Court notes that Plaintiffs' Motion to Dismiss Defendants' Motion for Summary Judgment will be construed as their Memorandum in Opposition to Defendants' Motion.  <u>See</u> <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (quoting <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (per curiam))).

this.  Plaintiffs raise many irrelevant arguments, having no bearing on the instant

Motion, to support their claim that Defendants' Motion should be denied.

Plaintiffs also continue to reassert the same allegations that are contained in their

Amended Complaint even though some claims have been dismissed in previous

court orders.[4]

Defendants' Reply argues that Plaintiffs' allegations of privacy

violations due to the inclusion of Family Court Orders are without merit because

Plaintiffs themselves attach various Family Court Orders to their filings.

Defendants also point out that Plaintiffs fail to comply with the Local Rules in that

they incorporate the "Exhibit Package" by reference rather than attaching it to the

concise statement of material facts.  Moreover, Defendants assert that none of the

exhibits attached to Plaintiffs' Opposition are properly authenticated and should

not be considered by the Court.  Last, Defendants argue that Plaintiffs simply

rehash old arguments, none of which are evidence that create a genuine issue of

material fact.

---

[4] For example, Plaintiffs, in their Opposition, again raise their allegation of a
HIPAA violation on the part of Plourde.  Pursuant to Judge Gillmor's Order dated
June 24, 2005, however, any and all HIPAA claims are dismissed as to all parties
because HIPAA does not create a private cause of action.  To the extent that
Plaintiffs attempt to reassert dismissed claims as against Defendants, the Court will
not address said claims.

A.     Eleventh Amendment Immunity

        Defendants first argue that under the doctrine of sovereign immunity, Plaintiffs' claims against them in their official capacities are barred.  Plaintiffs contend that Immunity does not apply to Defendants because they acted in their official capacity and under color of state law.  Plaintiffs' argument is without merit.

        The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI. It "confirms the sovereign status of the States by shielding them from suits by individuals absent their consent."  Frew ex. rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)). Thus, unconsenting states are immune from suits brought in federal courts by citizens from other states as well as their own citizens.  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, 506 U.S. 139, 144 (1993) (citing Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)).  "Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'"  Id. (citations omitted).  "[A] motion by a State or its agents to dismiss on Eleventh

8

Amendment grounds involves a claim to a fundamental constitutional protection, whose resolution generally will have no bearing on the merits of the underlying action." Id. at 145.

State officials acting in their official capacities are likewise immune from suit under the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); see also Hafer v. Melo, 502 U.S. 21, 24-25 (1991) (holding that a defendant official acting in his official capacity receives the same immunity as the government agency to which he belongs). This is because state officials acting in their official capacities are not "persons" for the purpose of 42 U.S.C. § 1983. Will, 491 U.S. at 71.

In this case, Defendants are immune from suit in their official capacities. There is no dispute that Defendants are state officials, as they hold various positions in the Department of Human Services ("DHS"), a state agency. Plaintiffs themselves state that Defendants are not entitled to immunity because they acted in their official capacities. However, it is well-established that when state officials act in their official capacities, they enjoy Eleventh Amendment immunity. DHS was dismissed from this case because Plaintiffs' claims against it

were barred by the Eleventh Amendment.  Defendants, in their official capacities,

enjoy the same immunity as the agency to which they belong.  Consequently, this

Court finds, as a matter of law, that Plaintiffs' claims as against Defendants in their

official capacities are barred by the Eleventh Amendment.  The only remaining

issue is whether Defendants are liable to Plaintiffs in their individual capacities.

B.     Qualified Immunity

         Defendants also argue that they are entitled to qualified immunity in

their individual capacities.  Specifically, Defendants contend that Snyder and Kam

played no part in the alleged deprivations so they are entitled to summary

judgment.  As to Plourde, Defendants assert that Plaintiffs have failed to identify a

clearly established right that Plourde violated, which also entitles him to qualified

immunity as a matter of law.

         "To establish that a state official is personally liable in an action under

42 U.S.C. § 1983, a plaintiff must show that 'the official, acting under color of

state law, caused the deprivation of a federal right.'"  Spoklie v. Montana, 411 F.3d

1051, 1060 (9th Cir. 2005) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).  As

long as the official's "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," he or she

has qualified immunity from civil liability under § 1983.  Id.  The following must

10

be determined in the analysis of a qualified immunity defense: "(1) what right has been violated; (2) whether that right was so 'clearly established' at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful." Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998), cert. denied, 525 U.S. 1016 (1998). "A particular right is 'clearly established' if the 'contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id.

    1.    Snyder and Kam

        Snyder and Kam are entitled to qualified immunity in their individual capacities. It is clear, from the evidence before the Court, that there is no genuine issue of material fact regarding their alleged involvement in the deprivations complained of by Plaintiffs. Neither party was involved with Plaintiffs or Kewai during Kewai's life. The record indicates that Snyder's only involvement in the case was a letter written to Plaintiffs on April 29, 2003, in response to a letter Plaintiffs had written to the Governor, DHS and others. Furthermore, it is not disputed that Snyder is not Plourde's supervisor. Even Plaintiffs admit this fact. Their contention that Snyder is nonetheless responsible for Plourde's actions does not create a genuine issue for trial. Because it is clear that Snyder has not caused

11

any deprivation of a federal right by drafting a letter five months after the death of Kewai in response to a letter written by Plaintiffs, she cannot be held personally liable in a § 1983 action and is entitled to qualified immunity as a matter of law.

Kam enjoys the same protection as Snyder because he was not even in town on November 22, 2002, when many of the alleged deprivations occurred. Plaintiffs seek to hold him liable under § 1983 for ratifying Plourde's actions after the fact and making false affirmations. In spite of construing the evidence in the light most favorable to Plaintiffs, there is no genuine issue of material fact regarding Kam's non-involvement in the alleged deprivations. Plaintiffs' mere belief and conviction that Kam lied by affirming that Kewai's placement into protective custody was justified does not create an issue for trial. There is no dispute that Kam is Plourde's supervisor. However, even if Plourde violated Plaintiffs' rights, Plourde's conduct cannot be attributed to Kam. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001) ("Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983."). Because Kam did not act under color of state law to cause a deprivation of Plaintiffs' federal rights nor can he be held liable for the actions of subordinates, he is entitled to qualified immunity as a matter of law.

2.     Plourde

Plourde is also entitled to qualified immunity as a matter of law in his individual capacity.  Plaintiffs assert numerous allegations against Plourde, including § 1983 and § 1985 claims and Fourth Amendment violations.  Plaintiffs' claim that Plourde ordered the police to take protective custody of Kewai with the intent to move him from Tripler does not identify a clearly established right that Plourde violated.  Although the police placed Kewai in protective custody, Kewai never left Tripler.  Count II consistently alleges that Plourde conspired with others to interfere with Plaintiffs' civil rights under 42 U.S.C. § 1985.   This Count will be discussed in more detail following the assessment of Plaintiffs' § 1983 claims against Plourde.

"Section 1985 creates a civil action for damages caused by two or more persons who 'conspire . . . for the purpose of depriving' the injured person of 'the equal protection of the laws, or of equal privileges and immunities under the laws' and take or cause to be taken 'any act in furtherance of the object of such conspiracy.'"  Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).  "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'"  Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004).  However, in the

absence of a section 1983 deprivation of rights, "a section 1985 conspiracy claim

predicated on the same allegations" is precluded.  Thornton, 425 F.3d at 1168

(quoting Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9ᵗʰ Cir. 1989)).

Plaintiffs have not stated specific facts to support the claimed

conspiracy that Plourde allegedly participated in.  The Ninth Circuit has instructed

that where a plaintiff insufficiently pleads a § 1985 claim, the plaintiff should be

allowed to amend the pleadings.  Olsen, 363 F.3d at 930.  This is limited, however,

to circumstances where the plaintiff has a cognizable claim under § 1983.  Id.

Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9ᵗʰ Cir. 2004) (quoting

Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9ᵗʰ Cir. 2002)) (quotations

omitted).  To state a § 1983 claim, a "plaintiff must demonstrate a deprivation of a

right secured by the Constitution or laws of the United States, and that the

defendant acted under color of state law."  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Counts IV, V, VII and VIII are related.  Counts IV are V are construed as § 1983 claims.  They allege a Fourteenth Amendment violation for due process denials and because Kewai was seized when there was no threat of harm to him.  Count VII simply seeks redress against Defendants under § 1983.  Count VIII alleges a Fourth Amendment violation by Plourde for vacating the legal rights of Kewai and Plaintiffs and for seizing custody of Kewai without a warrant or probable cause.

The Court's first inquiry is "whether, viewed in the light most favorable to the [Plaintiffs], the facts alleged show that [Plourde's] actions violated a constitutional right."  Doe v. Lebbos, 348 F.3d 820, 826 (9th Cir. 2003).  If the answer to the first inquiry is affirmative, the second inquiry is "whether the constitutional right was 'clearly established' such that it would have been clear to a reasonable social worker in [Plourde's] position that [his] conduct was unlawful."  Id.

Plaintiffs' claims essentially allege interference by Plourde of their right as "parents" to Kewai as well as an illegal seizure of Kewai.  The Court

15

determines that Plourde's actions did not violate Plaintiffs' constitutional rights. The Ninth Circuit has held that

> [o]fficials may remove a child from the custody of [his or her] parent <u>without prior judicial authorization</u> only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert the specific injury.

<u>Id.</u> at 827 (emphasis added). Furthermore, the "Fourth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." <u>Id.</u> Plourde, as Melanie's social worker, had reasonable cause to believe that Kewai could be in imminent danger because of the Family Court's finding, on April 24, 2000, that Mr. Robinson sexually abused Melanie. DHS was awarded foster custody of Melanie in light of the Family Court Order. Because the Family Court had already issued an order granting pendente lite rights to Plaintiffs on November 20, 2002, and Plaintiffs were taking steps to formally adopt Kewai, Plourde acted reasonably. He had valid concerns that Plaintiffs should not retain custody of Kewai because of Mr. Robinson's past sexual abuse of Melanie and status as an untreated sex offender. Therefore, Plourde did not violate Plaintiffs' constitutional rights under § 1983 or the Fourth Amendment by having Kewai placed in protective custody.

16

In addition, Plourde complied with relevant Hawaii law[5] regarding the temporary custody of a child who is believed to be imminent harm. Neither a court order or consent of the family is required for the DHS to assume temporary foster custody of a child. Haw. Rev. Stat. § 587-24(a). Even if the facts somehow showed that Plourde violated Plaintiffs' constitutional rights, it cannot be said that it would be clear to a reasonable social worker in Plourde's position that his or her conduct was unlawful under the circumstances in this case. Plourde is thus entitled to qualified immunity as a matter of law with respect to Counts IV, V, VII and VIII.

Plaintiffs also allege that related to this illegal seizure of Kewai is the issue of consent for medical treatment. According to Plaintiffs, the Tripler staff could not get in contact with Plourde for medical consent and consequently, necessary medical treatment was delayed, ultimately resulting in Kewai's death. Defendants counter this allegation with an expert opinion rendered by Dr. Bemis which states that there is no evidence of a delay in treatment or that some inability to obtain consent resulted in a delay in treatment.

The Court has carefully examined the evidence submitted by both parties. Although there appears to be some dispute about Tripler's belief as to who

---

[5] See Haw. Rev. Stat. § 587-24.

17

ultimately had the authority to give consent on behalf of Kewai, the record does not indicate that an inability to reach Plourde delayed treatment of Kewai in any way.  In fact, the medical records submitted by Plaintiffs confirm that as of November 25, 2002, Tripler staff believed that there was no indication for surgical intervention.  (Pls.' Exhibit Package, Ex. M at p. 56.)  Thus, despite Plaintiffs' personal conviction that Tripler should have performed surgery earlier and that Plourde is somehow at fault for this delay, the evidence shows otherwise.  Plaintiffs, as the non-moving party, cannot simply rely on the allegations of their Amended Complaint to raise a genuine issue for trial; the Court must be directed to specific evidence.  While it is certainly unfortunate that Kewai passed away, it cannot be said that his death is attributable to Plourde.  Therefore, as already discussed with respect to Counts IV, V, VII and VIII, Plourde is entitled to qualified immunity as a matter of law.

Because Plaintiffs do not have a cognizable § 1983 claim against Plourde, it follows that they are precluded from raising a § 1985 claim predicated on the same allegations.  Accordingly, Plourde is entitled to qualified immunity as a matter of law with respect to Count II.

C.    Absolute Immunity

Plourde and Kam further argue that they are entitled to absolute immunity for their February 22, 2003 letter in opposition to Kewai's adoption by Plaintiffs.  "State actors, including social workers, who perform functions that are 'critical to the judicial process itself' are entitled to absolute immunity."  Lebbos, 348 F.3d at 825.  Plaintiffs allege that the letter was written without proper investigation, knowledge or authority.  However, it is clear that this letter had direct bearing on the adoption proceeding and was critical to the judicial process, which entitles Kam and Plourde to absolute immunity.  See id. at 826 (absolute immunity where there is a "requisite connection to the judicial process" (quoting Miller v. Gammie, 335 F.3d 889, 896 (9th Cir. 2003) (en banc))).

Per the foregoing discussion, Plaintiffs' claims against Defendants in their official capacities are barred by the Eleventh Amendment as a matter of law and Defendants are entitled to qualified and absolute immunity in their individual capacities as a matter of law.

19

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 27, 2006.



_____
David Alan Ezra
United States District Judge

<u>Robinson et al. v. Tripler Army Medical Center et al.</u>, CV No. 04-00672 DAE KSC; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

20