Rufus R. Robinson III    PRO SE
Willard Imamoto          PRO SE
Pastor George Piliwale   PRO SE
85-124 A  Ala Walua Street
Waianae, Hawaii  96792
(808) 696-5341    Home / Business
(808) 696-3966    FAX
Email: rufus_r_robinson_iii1@msn.com

# United States District Court
## District of Hawaii

| | |
|---|---|
| Rufus R. Robinson III, Gretchen M. Robinson<br><br>Plaintiffs,<br><br>vs.<br><br>Tripler Army Medical Center; Tripler Army Medical Center, Director of Neonatal Intensive Care Unit; State of Hawaii, Department of Human Services; State of Hawaii, Child Protective Service; Patricia Snyder, Social Services Division Administrator; David K. Y. Kam, CPS Supervisor; Elliott Plourde, CPS Worker; Judge Lillian Ramirez-Uy; Honolulu (City) Police Department / Honolulu Police Officer K. Kanaa (Badge 3617)<br>Defendants | Civil No.:  CV04 00672 DAE KSC<br><br>**MEMORANDUM IN SUPPORT OF OBJECTION TO ORDER GRANTING DEFENDANT HPD'S MOTION TO DISMISS AND DENYING PLAINTIFFS' COUNTER-MOTION, FILED ON JANUARY 12, 2006 AND MOTION FOR RECONSIDERATION**<br><br>**Exhibit A**<br><br>JUDGE: THE HONORABLE U S DISTRICT JUDGE<br>DAVID ALAN EZRA<br><br>JURY TRIAL: March 7, 2006 at 9:00 AM |

MEMORANDUM IN SUPPORT OF

OBJECTION TO ORDER GRANTING DEFENDANT HPD'S MOTION TO DISMISS AND DENYING PLAINTIFFS' COUNTER-MOTION, FILED ON JANUARY 12, 2006 AND MOTION FOR RECONSIDERATION.

I.    BACKGROUND

Plaintiff, Rufus R. Robinson III, and Plaintiff Gretchen M. Robinson are the parents of Kewai K. Robinson, deceased on November 26, 2002. Defendants are complicit in the Second Degree Murder (as defined in 18 U.S.C. §1111 – see Exhibit A – and Law.com's Law Dictionary) of Kewai K. Robinson (Baby Kewai).

On November 22, 2002 State Social Worker (SW) Elliott Plourde with malice, aforethought, and malicious intent of heart to do grave harm to the Robinson Family conspired with his supervisor(s), the Honolulu Police Department (HPD), and Tripler Army Medical Center (TAMC) Staff to break well established law and procedures. Being well informed of the adoptive status of Baby Kewai and Judge Karen Radius' Pendente Lite Order, SW Plourde entered TAMC on that same day and ordered HPD Officer Kanaa to arrest Melanie Rapez (the natural Mother of Baby Kewai) on an outstanding

run away warrant (which did not appear to be the initial intent of HPD) and remove her from TMAC premises; the arrest was effected.

SW Plourde then illegally used Hawaii Revised Statute (HRS) §587-22(1) [see foot note] to order Officer Kanaa to take custody of Baby Kewai and turn that custody over to himself. This was in violation of HRS §587-3 [see foot note]. It was HPD's duty to make the decision concerning HRS §587-22. The order came from SW Plourde, which was an illegal order and the duty of HPD to ignore it, in light of the proofs provided by the Plaintiffs and TAMC Staff. HPD indirectly caused the 2nd Degree Murder of Baby Kewai by illegally removing him from the legal and caring custody of his parents and placing him under the cold, callused, and deadly care of SW Plourde and CPS. All this done in the presence of the Plaintiffs.

In the process of inflicting the greatest harm and pain on the Robinson Family, Baby Kewai was murdered by denying him life saving care under the medical restrictive orders of SW Plourde and over the objections of the Plaintiffs.

In the process of inflicting harm Baby Kewai was murdered and Counts I through VIII of the Complaint were forged.

---

FOOT NOTES:
1)      **HRS §578-3 Custody of child pendente lite.** At any stage of the proceeding subsequent to the filing of the petition and prior to the entry of a decree, the court, upon a showing that the best interests of the child will be served thereby, may order that the petitioner or petitioners shall be entitled to retain the custody and control of the child and shall be responsible for the care, maintenance and support of the child including any necessary medical or surgical treatment, pending the further order of the court. Such order may also authorize and legally obligate the petitioner or petitioners to arrange for the burial of the child if the child shall die prior to the entry of the decree.

2)      **HRS §587-22 Protective custody by police officer without court order.** (a) A police officer shall assume protective custody of the child without a court order and without the consent of the child's family regardless of whether the child's family is absent, if in the discretion of the police officer, the child is in such circumstance or condition that the child's continuing in the custody or care of the child's family presents a situation of imminent harm to the child.
A police officer may assume protective custody of the child without a court order and without the consent of the child's family regardless of whether the child's family is absent, if in the discretion of the police officer:
> (1) **The child has no legal custodian who is willing and able to provide a safe family home for the child;** or
> (2) There is evidence that the parent or legal guardian of the child has subjected the child to harm or threatened harm and that the parent or legal guardian is likely to flee the jurisdiction of the court with the child.

(b) A police officer who assumes protective custody of a child immediately shall complete transfer of protective custody to the department by presenting physical custody of the child to the department, unless the child is or presently will be admitted to a hospital or similar institution, in which case the police officer immediately shall complete transfer of protective custody to the department by so informing the department and receiving an acknowledgment from the hospital or similar institution that it has been informed that the child is under the temporary foster custody of the department.
(c) Upon the completion of the transfer of protective custody of a child by a police officer to the department, the department shall automatically assume temporary foster custody of the child.

II.  ARGUMENT

**Personal Injury Statute.** This HRS is not applicable since the charge is 2nd Degree Murder. HRS §657-7 is cited as reference for the statute of limitations – Personal Bodily Injury (2 years). The argument is presented masterfully, **B U T** a person **DIED!** We chose Second Degree Murder as the charge against the Defendants because Baby Kewai Died due to an assault on the Robinson Family. Although the assault was aggravated, pre-meditated, planned, conspired, and illegal proving First Degree Murder would be too difficult and perhaps unprovable since the planning meeting was not public. This behavior of some DHS Social Workers stand as a pattern or practice. HPD enable this pattern to continue and death or permanent disability has too often been the result. (Baby Ruben, Baby Peterboy, Baby Kewai, etc.)

**IT'S MURDER.** No statute of limitations exist on the murder charge. Murder is a Capital Offense. Refer to Exhibit A. Murder is defined in 18 USC §1111, Law.com Law Dictionary, and HRS §707. Time limits are set in HRS §701-708. This Honorable Court may mistakenly construe the charge of 2nd Degree Murder as Manslaughter due to the recklessness of the offense, but "wrongful death" can not apply due to the planned premeditated intent of SW Plourde and the proven conspiracy that took place that enabled SW Plourde to inflict the harm that resulted in the death of Baby Kewai.

**STATUTE OF LIMITATIONS.** Although mentioned above a brief revisit is in order. There is no statute of limitation on murder. Exhibit B. Emmett Till was murdered in 1955. Those responsible for his death will be tried. Many other notable civil rights death have been investigated and prosecuted successfully long after the actual murder of the person. There is no statute of limitation on murder.

Limitations are defined in (See Exhibit A) HRS §701-108 Time limitations, 18 U.S.C. 3281 Capital Offences, and 18 U.S.C. 3282 Offences not capital.

**ILLEGAL PRACTICE / OFFICAL CUSTOM.** HRS §587-22 (Foot Note 2) clearly show that it is the Official Duty (duty which solely mandated to the HPD by law) of the HPD to determine an imminent harm situation or if no family member is available to care for a child. Through years of unofficial misuse of this statute the DHS / CPS Social Worker involved has made the determinations and orchestrated the transfer of children from their current custodians to CPS custody without observing the law and without challenge; until now. As shown in the complaint and as admitted to by the defendants; Officer Kanaa first evaluated the situation and departed TAMC without any action. Upon the arrival of SW Plourde HPD was again summoned and directed to take custody of Baby Kewai. Imminent harm to Baby Kewai could not be used as an excuse to take custody of Baby Kewai since he was in an incubator, under 24 hour care, could not be moved, and security was present at TMAC. SW Plourde ordered the arrest of Melanie Rapez so that the guise of no parent could be used as reason for the illegal custody of Baby Kewai.

**COMPLAINT DEFICIENCIES.** Page 11 paragraph 1 of the order being objected to, states that the court must give the Pro Se Litigant a statement of complaint deficiencies.

5

Perhaps these unlearned litigants have received such a document (statement) and were just to ignorant of the legal terms to realize we had been presented such a statement. We do not have a copy of the statement in our procession (to our knowledge). Seems to us that we would not be loosing this war if a deficiency statement were provided. We are in the **habit** of obeying lawful authority, which this court is.

**CONSPIRACY.** Police Officer Kanaa spent some time communicating with his superiors before leaving TAMC on his first visit. On his second visit to TAMC on the afternoon of November 22, 2002, Officer Kanaa once again spent time in discussion with his superiors and with SW Plourde. A reason had to be contrived to expropriate custody of Baby Kewai, since he was obviously not in imminent danger. Officer Kanaa and SW Plourde had been shown the Pendente Lite Order and had been informed verbally that the Plaintiffs were the legal custodians of Baby Kewai. Police Report documentation (previously refused to be turned over by HPD) has been requested again and will be submitted to this court when in the Plaintiffs hands. The conspiracy is not theory or conjecture, but rather absolute fact. There are eye witnesses that the discussions took place as shown in the complaint. Exhibit C is the result of the conspiracy.

**HPD / OFFICER KANAA ARE COMPLICIT.** SW Plourde had no authority on a Military Installation. Officer Kanaa and HPD opened the door for SW Plourde to effect a murder just the same as a person who unlocks a bank door to allow a robber to come in and shoot the teller and leave with the cash. Once inside the bank there is little that the security can do without great injury. HPD through Officer Kanaa and in full agreement with SW Plourde, enabled SW Plourde to kill Baby Kewai.

III.  CONCLUSION

The basic and civil rights of citizens of the United States of America were illegally violated as described in the original complaint. As stated in the original complaint testimony in addition to that provided so far will continue to be provided to this court and provided at trial. A trial based on the true merits of this case and the truth. There is no other conclusion to draw other that SW Plourde lead a conspiracy to expropriate the custody of Baby Kewai and then through his continued misconduct directly caused the death of Baby Kewai. HPD / Officer Kanaa had an opportunity to stop the murder but rather aided in its accomplishment.

IV.  CERTIFICATION

I hereby certify that the Exhibits provided are true and correct copies of the original information. Exhibit C is a true copy of the document on file in the Medical Record of Kewai K. Robinson located at Tripler Army Medical Center.

DATED AT: HONOLULU, HAWAII    THIS    28th    DAY OF    FEBRUARY 2006.

_____
Rufus R. Robinson III    PRO SE
85-124 A    Ala Walua Street
Waianae, Hawaii 96792    (808) 696-5341

6