IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | | |
|---|---|---|
| RUFUS ROBINSON III, GRETCHEN M. ROBINSON, | ) ) ) | CV NO. 04-00672 DAE / KSC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| TRIPLER ARMY MEDICAL CENTER; TRIPLER ARMY MEDICAL CENTER, DIRECTOR OF NEONATAL INTENSIVE CARE UNIT; STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES; STATE OF HAWAII, CHILD PROTECTIVE SERVICES; PATRICIA SNYDER, SOCIAL SERVICES DIVISION ADMINISTRATOR; DAVID K.Y. KAM, CPS SUPERVISOR; and ELLIOTT PLOURDE, CPS WORKER; JUDGE LILLIAN RAMIREZ-UY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. _____ | ) ) ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing. Plaintiffs' counsel, Rory Soares Toomey, indicated

that he could not make the hearing as scheduled. After reviewing Plaintiffs' and Defendants' motions and the supporting and opposing memoranda, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

The Court **GRANTS** Plaintiffs' Motion as to Plaintiffs' claims made pursuant to the Fourth and Fourteenth Amendments against Defendant Elliot Plourde in Counts IV, V and VIII of their Amended Complaint. The Court **GRANTS** Defendants' Motion as to Plaintiffs' allegations under § 1983 regarding the February 22, 2003 letter.

<u>BACKGROUND</u>

The parties are familiar with the facts of this case so the Court only recounts those facts pertinent to its immediate determination.

On April 24, 2000, a court found that Melanie Rapez, now Melanie Wolf ("Wolf") was sexually abused by her stepfather, Rufus Robinson. (Defendants' Counter Concise Statement of Facts "DCSF," Ex. 3 ¶ 6, Doc. # 239; Defendants' Concise Statement of Facts "DSF," Ex. A, Doc. # 235.) Wolf was placed in the legal custody of the Department of Human Services, State of Hawai`i ("DHS"), but ran away from her foster home in September 2001. (DCSF, Ex. 3

2

¶¶ 6-7.)  In June 2002, a Hawai`i Family Court issued a bench warrant for Wolf's arrest.  (<u>Id.</u> ¶ 8.)

On November 18, 2002, Wolf gave birth prematurely to Kewai Kamakanaionalaniokekai Robinson ("Kewai") at Tripler Army Medical Center, Honolulu, Hawai`i ("Tripler").  (Plaintiffs' Concise Statement of Facts "PSF," Ex. 1, Doc. # 233.)   At the time she gave birth, Wolf was under 18 and still in the legal custody of DHS.  (DCSF, Ex. 3.)  Elliott Plourde ("Plourde"), a social worker with DHS, was Wolf's case worker.  (<u>Id.</u> ¶ 4.)  David K. Y. Kam ("Kam"), a Supervisor of the Oahu Special Services Case Management Unit, Department of Human Services, State of Hawai`i, was Plourde's supervisor.  (<u>Id.</u>, Ex. 2 ¶¶ 1, 4.)

On November 20, 2002, the Family Court, First Circuit of Hawai`i, granted an <u>ex</u> <u>parte</u> motion for custody of Kewai <u>pendente</u> <u>lite</u> ("<u>Pendente</u> <u>Lite</u> Order"), giving Wolf's parents Rufus and Gretchen Robinson (the "Robinsons" or "Plaintiffs") immediate legal custody of Kewai.  (PSF, Ex. 2.)  The primary reason for the Plaintiffs seeking custody was so that Kewai would be entitled to continuing medical coverage at Tripler.  (Amended Compl. at 3.)

On November 22, 2002, the Hawai`i Family Court held a review hearing on Wolf's status with DHS.  (DCSF, Ex. 3 ¶ 9.)  At the hearing, Gretchen Robinson reported that Wolf was at Tripler and had given birth four days earlier.

(Id.)  Later that day, DHS took Kewai into protective custody, but did not remove him from Tripler.  (Plaintiffs' Concise Statement of Facts to Defendants' Motion for Summary Judgment "PSF re DMSJ," Ex. 5, Doc. # 242.)  At the same time, Wolf was arrested pursuant to her outstanding bench warrant.  (DSF, Ex. B.) Kewai died on November 26, 2002.  (PSF, Ex. 3.)

On February 22, 2003, Plourde, with Kam's approval, wrote a letter to the Honorable R. Mark Browning, Judge in the First Circuit Court, Honolulu, Hawai`i, regarding the Robinsons attempts to posthumously adopt Kewai.  (DSF, Ex. B.)  In his letter, Plourde related to Judge Browning the reason behind Wolf's placement in DHS custody and further stated that Rufus Robinson had failed to complete court ordered services.  (Id.)  On April 2, 2003, the Robinsons formally adopted Kewai posthumously with an effective date of November 20, 2002.  (PSF, Ex. 4.)

On November 12, 2004, the Robinsons filed a Complaint, entitled "Kewai K. Robinson's Life Complaint and Summons," naming various defendants including Plourde and Kam.  (Doc. # 1.)  Plaintiffs last amended their Complaint on October 11, 2005.  ("Amended Compl.," Doc. # 106.)

Subsequently, in a series of orders, the Court dismissed all of Plaintiffs' claims against all named defendants, thereby terminating the case.  (See

4

Docs. ## 31, 64, 65, 78, 185, 188, 195, 204.)  Plaintiffs appealed to the Ninth

Circuit.  (See Docs. ## 191, 215.)

The Ninth Circuit affirmed this Court's dismissal of all claims against

Defendant Kam in his official and personal capacities, except for any § 1983

claims against him in his personal capacity arising from the filing of the letter in

Kewai's adoption proceedings.  ("Order," Doc. # 217.)  The Ninth Circuit also

affirmed this Court's dismissal of all claims against Plourde in his official and

personal capacities, except for any § 1983 claims against him in his personal

capacity arising from the filing of the letter in Kewai's adoption proceedings, and

the § 1983 claim against him in his personal (individual) capacity alleging that he

unconstitutionally interfered with Plaintiffs' right to custody of Kewai.  (Order at

12.)  The Ninth Circuit affirmed dismissal of Plaintiffs' claims against Kam and

Plourde in their official capacities due to sovereign immunity.  (Id. at 7 (citing Will

v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).  The Ninth Circuit

affirmed this Court in dismissing all other defendants and claims.  (Id.)

Accordingly, the Plaintiffs' claims against Plourde and Kam

(collectively "Defendants") as stated in their Amended Complaint that could

possibly relate to the remanded § 1983 claims include: Count IV and V against

Plourde for violations of Plaintiffs' Fourteenth Amendment rights for denial of due

5

process in removing Kewai from Plaintiffs' custody without notice and a hearing and because Kewai was allegedly seized from his legal parents when there was no threat of harm or immediate danger to Kewai;[1] and Count VIII against Plourde under the Fourth Amendment for vacating the legal rights of Kewai and Plaintiffs and for seizing custody of Kewai without a warrant or probable cause.  (Amended Compl. at 6-7.)

On October 7, 2009, Plaintiffs filed a Motion for Partial Summary Judgment asking the Court to find that Plourde and Kam "violated Plaintiffs' right to due process of law and are not entitled to absolute or qualified immunity." (Plaintiffs' Motion Partial Summary Judgment "PMPSJ," Doc. # 231.)  In their Motion, Plaintiffs address Plourde's action in directing DHS to take custody of Kewai and Plourde's alleged action of informing Tripler staff that he had the sole right to make medical decisions on behalf of Kewai.

Also on October 7, 2009, Defendants filed a Motion for Summary Judgment as to all of Plaintiffs' claims.  ("DMSJ," Doc. # 234.)  On November 25,

---

[1]  Because Plaintiffs were proceeding pro se, the Court previously construed Counts IV and V to apply to Defendants even though Plaintiffs fail to name any defendants in those counts.  Also, as remanded by the Ninth Circuit and because of the Plaintiffs pro se status in the drafting of their Amended Complaint, the Court construes Plaintiffs' constitutional claims as being made pursuant to § 1983 and as requesting relief in the form of damages, although no relief was requested.

2009, Defendants filed an Opposition to Plaintiffs' Motion.  ("Defendants' Opp'n," Doc. # 240.)  Also on November 25, 2009, Plaintiffs filed an Opposition to Defendants' Motion.  ("Plaintiffs' Opp'n," Doc. # 241.)  On December 3, 2009, Defendants filed a Reply in support of their Motion.  ("Reply," Doc. # 243.)

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 632 (9th Cir. 1987) (internal citations omitted).

However, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. Id. at 630 (citation omitted) (emphasis added). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the factual context makes the non-moving party's claim or defense implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of trial. Id. at 587.

8

## DISCUSSION

As ordered by the Ninth Circuit, Plaintiffs' remaining claims may only come under § 1983 and must be directed at particular factual allegations by Plaintiffs relating to the filing of the letter in Kewai's adoption proceedings and Plourde's actions in directing DHS to take custody of Kewai.  (Order at 12.) Counts IV, V, and VIII are related and all go to Plourde's actions in directing DHS to take custody of Kewai.

Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002)) (quotations omitted).  To state a § 1983 claim, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and

that the defendant acted under color of state law." <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

I.    <u>The February 22, 2003 Letter</u>

Defendants move for summary judgment regarding Plaintiffs' allegations that Defendants violated their rights by submitting Plourde's February 22, 2003 letter in Kewai's posthumous adoption proceedings.  (DMSJ at 6-9.)  In opposition, Plaintiffs assert that Defendants' actions in submitting the letter amounted to fraud, and therefore Kam and Plourde are not entitled to absolute or qualified immunity.  (Plaintiffs' Opp'n at 2, 8-9; PMPSJ at 1.)

As remanded by the Ninth Circuit, Plaintiffs' allegation under § 1983 is that Defendants violated Plaintiffs' rights by submitting Plourde's February 22, 2003 letter in Kewai's posthumous adoption proceedings because the letter was allegedly written  "without investigating and without proper knowledge and without proper authority, improper, hateful, and hurtful statements were made." (Order at 8.)  The Ninth Circuit remanded this allegation so that this Court could consider what claims Plaintiffs raised with regard to the letter, and whether absolute immunity still applied to those claims in light of Beltran.  <u>Beltran v. Santa Clara County</u>, 514 F.3d 906, 909 (9th Cir. 2008) (en banc).  (Order at 8.)

As a preliminary matter, the Court finds that Plaintiffs have failed to state a claim in their Amended Complaint that goes to their factual allegations regarding the February 22, 2003 letter.  Further, even in Plaintiffs' general factual allegations, Plaintiffs fail to identify any right that Defendants may have violated by submitting the letter, let alone one that entitles Plaintiffs to relief under federal law.  Therefore, Plaintiffs have failed to state a claim under which relief may be granted, and the Court need not reach the factual context of the letter or the application of absolute immunity under <u>Beltran</u>.  However, in an abundance of caution and to give the broadest reading to the Ninth Circuit's disposition in this case, the Court notes that even if Plaintiffs had stated a claim, Plaintiffs would fail to meet their burden to avoid summary judgment and Defendants would be entitled to immunity.

From the evidence submitted by Defendants, it is clear that the Family Court found Mr. Robinson guilty of child sexual abuse on April 24, 2000.  The Defendants do not address Plaintiffs' claim that Wolf subsequently recanted her allegations of sexual abuse or that a subsequent police report showed insufficient evidence for an arrest or for a referral to the prosecutor.   However, it is clear that these facts, if true, were not dispositve to the Family Court as Wolf remained in DHS custody until after Kewai's birth, and therefore the letter simply relating the

status of Kewai's mother with DHS at the time of Kewai's birth was not fraudulent.  (DCSF, Ex. 2 ¶¶ 4-5.)   Plaintiffs, as the non-moving party, cannot simply rely on factual allegations to raise a genuine issue for trial; the Court must be directed to specific evidence.  Plaintiffs failed to submit any evidence to support their allegation that Defendants' letter was fraudulent or contained false statements.  Again, an allegation for which no claim was ever raised in Plaintiffs' Amended Complaint.

State actors, including social workers, who perform functions that are 'critical to the judicial process itself' are entitled to absolute immunity.  <u>Miller v. Gammie</u>, 335 F.3d 889, 896-898 (9th Cir. 2003) (en banc).  Under <u>Beltran</u>, social workers are "not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury . . . ."  <u>Beltran</u>, 514 at 908.

Kam and Plourde's February 22, 2003 letter to Judge Browning contains a recitation of the Department of Human Service's previous finding leading to the Family Court's April 24, 2000 ruling that Plaintiff Rufus Robinson sexually abused his stepdaughter, Kewai's mother, and a statement of fact regarding Rufus Robinson's failure to attend treatment.  Defendants are not required to also submit Plaintiffs' explanation for why the allegations of sexual

12

abuse allegedly should not have been sustained by the Family Court or for why Rufus Robinson failed to attend treatment, and such omissions do not amount to fraud or false statements.

Therefore, as Defendants assert, Beltran would be inapplicable to any claim Plaintiffs may have raised in connection with their factual allegations because here there is no basis for an allegation of fabricated evidence during an investigation or made false statements in a dependency petition affidavit.  The letter was written by Plourde in his capacity as an advocate within the judicial decision-making process and had direct bearing on the adoption proceeding and was critical to the judicial process, which entitles Kam and Plourde to absolute immunity.  See Miller, 335 F.3d at 896.

Further, Kam and Plourde would be entitled to qualified immunity because even taking Plaintiffs' allegations in a light most favorable to them, Plaintiffs' allegations do not show a violation of a constitutional right.  In fact, there is no clearly established constitutional right to have the decision of a dependency hearing excluded from a related dependency hearing or to require their own explanations be appended to such decision before submission.   See Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson v. Callahan, 555 U.S. __

(2009).  Therefore, Kam and Plourde are entitled to immunity in connection with the February 22, 2003 letter.

In summary, Plaintiffs have failed to state a claim upon which relief may be granted.  Furthermore, had Plaintiffs correctly raised such a claim, Defendants would be entitled to immunity.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Defendants Kam and Plourde's actions in connection with the February 22, 2003 letter.  No further claims remain against defendant Kam.

II.    Custody and Care of Kewai

A.    Qualified Immunity

The Ninth Circuit reversed this Court's determination that Plourde was entitled to qualified immunity and remanded Plaintiffs' § 1983 claim alleging that Plourde unconstitutionally removed Kewai from Plaintiffs' custody and care. (Order at 9-12.)

As stated by the Ninth Circuit, in a qualified immunity inquiry, the Court's first asks: taken in the light most favorable to the party asserting the injury, whether the facts alleged show that defendant's actions violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson v. Callahan, 555 U.S. __ (2009).  If the answer to the first inquiry is affirmative, the

second inquiry is whether the constitutional right was "clearly established" at the time of Defendants' alleged misconduct in light of the specific context of the case. Id.  With respect to this second inquiry, the court must determine whether "it would be clear to a reasonable [social worker] that his conduct was unlawful in the situation he confronted."  Id. at 202 (citation omitted).

The Ninth Circuit found that Plourde's action, if proven, constituted a violation of clearly established rights, specifically that "specific, articulable evidence" of "imminent danger" is required to remove a child from parental custody without a court order.  (Order at 9-10.)  Looking at the specifics of the situation confronted, the Ninth Circuit recognized that "[a]n indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to the reasonable inference of imminent danger sufficient to justify taking children into temporary custody," however, the Court noted that such an inference is not always reasonable, especially when the allegations of abuse are not specific to the child who is allegedly in danger.  (Id. at 10.)

Plourde makes conflicting arguments in defending his actions of taking immediate custody of Kewai.  Plourde argues that he did not know of Plaintiffs' custody of Kewai.  (DMSJ at 9-11.)  However, Plourde argues that he

15

took Kewai into state custody because Wolf could not provide a home for him and because Rufus Robinson was an untreated sex offender.  (DCSF, Ex. 3 ¶ 11.)

Here, as the Ninth Circuit noted, there were two factors mitigating any immediate danger: first, there was no cause to believe that Kewai would be in imminent danger of sexual abuse from Rufus, and second, Kewai was being cared for at a hospital.  Therefore Plourde had no such indication of imminent danger and a reasonable official would have understood that he could not revoke plaintiffs' right to custody of Kewai without a prior court order.

Adopting the reasoning of the Ninth Circuit, this Court finds that Plourde is not entitled to qualified immunity because he did not have specific, articulable evidence that provided reasonable cause to believe that Kewai was in imminent danger of abuse before he took custody of Kewai.

B.     Constitutional Violation

Once it has been established that the defendant is not entitled to qualified immunity, a court may turn to the merits of the case.   Saucier, 533 U.S. at 202-06.  Both Plaintiffs and Defendants move for summary judgment.  No genuine issues of material fact remain.

The Ninth Circuit, taking the facts in the light most favorable to Plaintiffs as the non-moving party, concluded that Plaintiffs established a genuine

16

issue of material fact as to a constitutional violation.  (Order at 9-10.)  Therefore, summary judgment may not be granted in favor of Defendants, and the Court looks only to Plaintiffs' motion.

The inquiry then is, taking all the facts in the light most favorable to Plourde, whether the Plaintiffs have shown that Plourde removed Kewai from Plaintiffs' custody absent information at the time of the seizure that established reasonable cause to believe that Kewai was in imminent danger of serious bodily injury and that taking custody was reasonably necessary to avert that specific injury.  See Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007).

Parents have a constitutionally protected right to care for their children and to make medical decisions for them, and that right cannot be extinguished without notice and a hearing unless the children are in immediate danger.  See Wallis v. Spencer, 202 F.3d 1126, 1138, 1141 (9th Cir. 2000); Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997).  Indeed, the Ninth Circuit has held that

> [p]arents and children have a well-elaborated constitutional right to
> live together without governmental interference.  The Fourteenth
> Amendment guarantees that parents will not be separated from their
> children without due process of law except in emergencies.  Officials
> violate this right if they remove a child from the home absent
> information at the time of the seizure that establishes reasonable cause
> to believe that the child is in imminent danger of serious bodily injury

17

and that the scope of the intrusion is reasonably necessary to avert that specific injury.  The Fourth Amendment also protects children from removal from their homes absent such a showing. Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

Rogers, 487 F.3d at 1294 (citations and internal quotation marks omitted). [2]

As stated above in relation to qualified immunity, "[a]n indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to the reasonable inference of imminent danger sufficient to justify taking children into temporary custody." Ram v. Rovin, 118 F.3d 1306, 1311 (9th Cir. 1997).  However, such an inference is not always reasonable, especially when the allegations of abuse are not specific to the child who is allegedly in danger or the child is not in a position where he could be harmed.

Although both Plaintiffs and Defendants state that Plaintiffs' claim that Plourde unconstitutionally removed Kewai from Plaintiffs' custody and care depends on whether or not Plourde knew of the Pendente Lite Order issued by

---

[2]Plourde did not argue to the Ninth Circuit, and has not argued here, that the Plaintiffs' interest in continued custody of Kewai was entitled to any less protection because of their status as grandparents or prospective adoptive parents at the time that Plourde intervened.

Judge Radius,[3] knowledge of Plaintiffs' custody of Kewai is not necessary to the Court's inquiry.  The undisputed facts before the Court are that the Plaintiffs were given custody of Kewai on November 20, 2002, and Plourde took Kewai into custody on November 22, 2009 without an investigation into who had legal custody of Kewai and without obtaining a warrant.

Again, as the Ninth Circuit noted, there were two factors mitigating any immediate danger: first, there was no cause to believe that Kewai would be in imminent danger of sexual abuse from Rufus, and second, Kewai was being cared for at a hospital.

Taking immediate custody of Kewai was not necessary because in the time it would have taken to obtain a warrant, Kewai's situation would not have changed.  Kewai was a four-day-old premature baby weighing less than three pounds at birth who was in critical condition and was not in danger of being removed from the hospital.  In fact, Plaintiffs were doing all that they could to make sure that Kewai was not removed from the hospital by instituting their own legal custody in order to provide medical coverage for Kewai.

---

[3] Plaintiffs may not continue to assert this claim against Kam as the Ninth Circuit affirmed dismissal of this claim as to Kam. (<u>See</u> PMPSJ at 4; Order at 12.)

19

Plourde does not argue that he believed Kewai would be removed from the hospital by either Wolf or Plaintiffs prior to the time in which he could obtain a court order.  He also does not argue that he feared their decisions regarding medical care would have been detrimental for Kewai.  Plourde argues that he took Kewai into state custody because Wolf could not provide a home for him and because Rufus Robinson was an untreated sex offender.  (DCSF, Ex. 3 ¶ 11.)  Even taking all of the facts in a light most favorable to Plourde, there was no imminent risk of serious bodily harm to Kewai and a reasonable social worker would have understood that he could not revoke Plaintiffs' right to custody of Kewai without a prior court order.

In their own motion for partial summary judgment, Plaintiffs allege that related to the illegal seizure of Kewai is the issue of Plaintiffs' right to direct Kewai's medical treatment.  (PMPSJ at 4.)  The Court agrees.  Plaintiffs' claim as to denial of their right to direct medical care goes directly to Plaintiffs' right to custody of Kewai.[4]  (Order at 9, 12.)  Plourde's seizure of Kewai

_____

[4]  However, to the extent that Plaintiffs attempt to argue that Plourde's actions in taking custody of Kewai interfered with Kewai's medical treatment at Tripler and ultimately resulted in Kewai's death, the Ninth Circuit already affirmed summary judgment in favor of Plourde on the § 1983 and wrongful death claims alleging that Plourde's unavailability to make necessary medical decisions for Kewai led to his death.

unconstitutionally terminated Plaintiffs' right to make medical decisions on behalf of Kewai.

Both parties have submitted their own declarations regarding Kewai's treatment at Tripler.  Plourde asserts that at no time did he ever tell the Tripler staff that he had authority to make medical decisions regarding Kewai's treatment and care, nor did the staff at Tripler ever request his permission to render any treatment.  (DMSJ at 11-12, DCSF, Ex. 2 ¶¶ 12-14; Reply at 4.)  However, Plourde's act of taking legal custody of Kewai away from Plaintiffs had the effect of terminating Plaintiffs' ability to make such decisions on Kewai's behalf. Further, Defendants, as the nonmoving party, have submitted no declarations from Tripler to the effect that Tripler was unaware of such a change in custody.  In fact, the prior proceedings show that Tripler considered child protective services and DHS the authority for medical decisions relating to Kewai.  (Order at 8.)

For all the above reasons, the Court finds that the lack of exigency would have been apparent to any reasonable social worker and Plourde violated the Plaintiffs' clearly established Fourth and Fourteenth amendment rights by taking custody of Kewai without a warrant.   Accordingly, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment as Plaintiffs' claims made pursuant to the

Fourth and Fourteenth Amendments against Defendant Elliot Plourde in Counts

IV, V and VIII of their Amended Complaint.

<u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion

for Partial Summary Judgment and **GRANTS IN PART AND DENIES IN PART**

Defendants' Motion for Summary Judgment.

The Court **GRANTS** Plaintiffs' Motion as to Plaintiffs' claims made

pursuant to the Fourth and Fourteenth Amendments against Defendant Elliot

Plourde in Counts IV, V and VIII of their Amended Complaint.  The Court

**GRANTS** Defendants' Motion as to Plaintiffs' allegations against under § 1983

regarding the February 22, 2003 letter.

No further counts or defendants remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 16, 2009.



_____
David Alan Ezra
United States District Judge

Robinson v. Tripler Army Med. Ctr. et al., CV NO. 04-00672 DAE / KSC; ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT